CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUL 08 2020
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| ALLISON COATES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:19cv00049 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SUTHARS, INC., d/b/a Kare Pharmacy | ) | By: Hon. Jackson L. Kiser |
| and Compounding, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant Suthars, Inc.'s motion to dismiss. [ECF No. 6.] The parties fully briefed the issues and I held oral argument on the motion on May 7, 2020. I have reviewed the pleadings, arguments of the parties, and applicable law. For the reasons set forth herein, I will grant the motion to dismiss and give Plaintiff leave to file an amended complaint.

## I.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Plaintiff Allison Coates ("Plaintiff") began working at Kare Pharmacy and Compounding in June 2017. Kare Pharmacy is owned by Defendant Suthars, Inc. ("Defendant"). Jay Suthar ("Jay") is the Chief Operating Officer and President. His father, Prakash Suthar, is an owner, director, and employee as well.

Shortly after her employment began, Plaintiff alleges Jay began making sexual advances towards her. According to her, Jay "repeatedly" asked her to go out on a date with him. (Compl. ¶ 12 [ECF No. 1].) Plaintiff always responded "no" and told him she did not want any type of sexual relationship with him. Jay also told Plaintiff he wanted to marry her

and have children with her, and that if she married him, he could give her the family, money, children, and lifestyle she wanted out of life. In December 2017, Jay sent a $500 Kate Spade gift card to Plaintiff at her home. (Id. ¶ 13.)

Plaintiff alleges that, in January 2018, Jay told Plaintiff he would "fight for her" to have a romantic and marital relationship with him. (Id. ¶ 14.) Jay also made a point of telling Plaintiff he had had a relationship with a prior employee. (Id. ¶ 15.) He also mentioned a previous marketer who worked for him and said that, if she had not already been married, he would have "married the shit out of her." (Id.)

Plaintiff contends Jay's advances created a hostile work environment and made it difficult for her to focus on her job. After repeatedly rejecting his advances, she alleges Jay began retaliating against Plaintiff by excluding her from meetings that were necessary for her to do her job. Jay terminated Plaintiff on August 4, 2018.

After her termination, Plaintiff filed a complaint with the Equal Employment Opportunity Commission. On September 20, 2019, the EEOC terminated its processing of her charge and issued her a Notice of Right to Sue. [ECF No. 3-1.] On December 10, 2016, Plaintiff filed a two-count complaint in this court alleging sex discrimination and retaliation. On February 10, 2020, Defendant filed a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). [ECF No. 6]. The parties briefed the issues fully, and I heard oral argument on May 7. Following a thorough review of the pleadings, arguments, and applicable law, this matter is ripe for disposition.

## II.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. Id. The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

## III.    DISCUSSION

Plaintiff alleges that Jay's behavior amounted to a hostile work environment, which constitutes discrimination on the basis of sex and is actionable under Title VII of the Civil Rights Act of 1964. See 42 U.S.C. § 2000e-2(a) & (a)(1); Meritor Savings Bank v. Vinson, 477 U.S. 57, 66–67 (1986). A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult, and that is sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations omitted). But "Title VII does not 'attempt to purge the workplace of vulgarity' and '[n]ot all sexual harassment that is directed at an individual because of her sex is actionable.'" Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207 (4th Cir. 2014) (quoting Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996)). "Activities like simple teasing, offhand comments, and off-color jokes, while often regrettable, do not cross the line into actionable misconduct." EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 328 (4th Cir. 2010) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)).

In order to state a claim for a hostile work environment, Plaintiff must allege four elements: "(1) unwelcome conduct, (2) based on [her] gender, (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment, and (4) some basis for imputing liability to" her employer. Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 266 (4th Cir. 2001). The third element of a discrimination claim—that the conduct was "severe or pervasive"—"has both subjective and objective components." EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009) (citing Harris, 510 U.S. at 21–23). Plaintiff must demonstrate she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." Id. The circumstances to be considered in this analysis include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely offensive; and (4) whether it unreasonably interferes with an employee's work performance." Smith v. First Union Nat'l

Bank, 202 F.3d 234, 242 (4th Cir. 2000) (citing Harris, 510 U.S. at 23); see also Faragher, 524 U.S. at 787–88; Cent. Wholesalers, 573 F.3d at 176.

Examining Plaintiff's allegations as pled, she has failed to allege conduct that was "severe or pervasive." At most, she alleges Jay asked her out on a date several times and she said no. He also discussed his desire to marry her and assured her that he could provide for her. Again, she said no. Those actions do not, in my opinion, rise to the high level necessary to state a claim under Title VII. See EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (noting "that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test"). Looking at the totality of the circumstances, see Smith, 202 F.3d at 242, Plaintiff's allegations do not rise to the level of "severe or pervasive" necessary to state her claim. There is no allegation, aside from "repeatedly," to suggest the frequency of Jay's conduct. See Harris v. Mayor & City Council of Baltimore, Civil No. SKG-06-2415, 2008 WL 11345897, at *10 (D. Md. Sept. 30, 2008) (noting that the majority of cases to survive summary judgment in the Fourth Circuit "include harassing conduct that occurs almost daily"), rev'd by on other grounds by 429 F. App'x 195 (4th Cir. 2011) (per curiam) (unpublished). As to its severity, Plaintiff alleges Jay asked her out on dates, which is, in the grand scheme of potential forms of sexual harassment, minor.[1] Plaintiff does not allege any physically threatening or humiliating conduct and does not allege any psychological harm. She conclusively alleges that she was unable to focus on her work, but no other allegations suggest severe or pervasive harassment.

---

[1] Asking a co-worker out may be unwise in today's legal landscape, but it does not always rise to the level of harassing conduct outlawed by Title VII. Of course, depending on all the circumstances, it very well could be. As to Plaintiff's complaint, she has not alleged enough to qualify asking her on dates as "harassing."

An unpublished decision of the Fourth Circuit is instructive on this point. In Singleton v. Department of Correctional Education, the plaintiff, Mary Ann Singleton, was a librarian in a maximum-security state prison. Singleton alleged that a co-worker, Elmer E. "Gene" Shinault:

> engaged in a conversation with Mrs. Singleton's DCE supervisory in which Shinault stated that Mrs. Singleton should be "spanked" every day; insistently complimented Mrs. Singleton; stared at her breasts when he spoke to her; on one occasion, he measured the length of her skirt to judge its compliance with the prison's dress code and told her that it looked "real good"; constantly told her how attractive he found her; made references to his physical fitness, considering his advanced age; asked Mrs. Singleton if he made her nervous (she answered "yes"); and repeatedly remarked to Mrs. Singleton that if he had a wife as attractive as Mrs. Singleton, he would not permit her to work in a prison facility around so many inmates.

115 F. App'x 119, 120 (4th Cir. 2004) (unpublished). When Shinault became Singleton's supervisor, he "had a security camera installed in her office in a way that permitted him to observe her as she worked, supposedly for safety reasons, but which did not permit him to observe the prison library or any interactions with inmates that she might have had while she was not sitting at her desk." Id. She alleged that offending conduct "occurred approximately four times a week from July 2000 until October 2001." Id.

After Singleton brought suit, the district court granted summary judgment to the Department of Correctional Education. In affirming that decision, the Fourth Circuit stated:

> [A]llegations that Shinault made offensive comments, showed [the plaintiff] unwanted attention that made her uncomfortable, and continuously expressed a sexual interest in her do not meet the high standard set forth under Title VII. The conduct that she complains of, though boorish and offensive, is more comparable to the kind of rude behavior, teasing, and offhand comments that we have held are not sufficiently severe and

- 6 -

> pervasive to constitute actionable sexual harassment. Mrs.
> Singleton does not allege that Shinault ever requested a sexual
> act, touched her inappropriately, discussed sexual objects,
> showed her obscene materials, told her vulgar jokes, or
> threatened her.

Id. at 122–23 (internal citations omitted); see Bass v. E.I. DuPont de Memours & Co., 324

F.3d 761, 765 (4th Cir. 2003); Hartsell v. Suplex Prod., Inc., 123 F.3d 766, 773 (4th Cir.

1997); see also Baskerville v. Culligan Int'l Co., 50 F.3d 428, 431 (7th Cir. 1995).

Taken her allegations as true, Plaintiff's *allegations* fall far short of what Singleton was

able to *prove*. Plaintiff does not allege a time period over which Jay allegedly made the

comments, relying only on the vague "repeatedly" to state her claim.[2] Although she alleges

Jay asked her on dates, she does not allege any sexual comments or innuendo. See Oncale v.

Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (noting the importance of the

"severe or pervasive" requirement so that "courts and juries do not mistake ordinary

socializing in the workplace—such as . . . intersexual flirtation—for discriminatory

'conditions of employment.'"). She alleges that Jay made "sexual" advances to her, but does

not allege any facts to support that statement. See Twombly, 550 U.S. at 555 (internal

quotation marks omitted). Taking all of her facts as true, the most that can be said is that Jay

asked her on a date[3] more than once and she said "no." Those allegations are insufficient to

state a claim for a hostile work environment. See, e.g., Dwyer v. Smith, 867 F.2d 184 (4th

Cir. 1989) (affirming the District Court's directed verdict in favor of the defendant where the

---

[2] Repeatedly could mean 3–4 times during her entire employment, or multiple times a day. That is a huge distinction, and one Plaintiff ignores.

[3] Plaintiff also alleges Jay mentioned having dated another woman who worked for him in the past. (See Compl. ¶ 15.) Without any context whatsoever, this type of standard, workplace conversation cannot rise to the level of a Title VII violation. Such a comment, divorced from context or additional factual allegation, does not violate federal law.

plaintiff's supervisor was alleged to be the "ring leader" who encouraged comments and attitudes toward the plaintiff, placed pornographic material in her station mailbox, accused her of having sexual relations with other officers, engaged in gratuitously graphic conversations about victims of sex crimes, drove by her house to see if she had any male visitors, and generally favored women in degrading terms); Andrews v. Staples the Office Superstore East, Inc., No. 7:11CV00037, 2013 WL 3324227, at *2, 8–11 (W.D. Va. July 1, 2013) (finding that the plaintiff had failed to establish severe or pervasive harassment when a co-worker changed clothes in front of her—"down to his boxer shorts"—on approximately seven occasions, regularly stared and grinned at her, and often told her how much he missed her); Moret v. Geren, 494 F. Supp. 2d 329, 341 (D. Md. 2007) (finding that the plaintiff could not meet the "high burden of proof" to show severity or pervasiveness when her supervisor attempted to have her date his son and come to his house, gawked at her, and repeatedly asked her to massage his buttocks in the nude). Plaintiff will be granted leave to file an amended complaint to supplement her factual allegations in the event she can state a claim for a hostile work environment by including facts and additional details omitted from her initial pleading.

As to Plaintiff's second cause of action, in order to state a claim for retaliation under Title VII, Plaintiff must allege "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. Coleman v. Court of Appeals of Md., 566 U.S. 30 (2012).

Even assuming Plaintiff's rejection of Jay's request for a date constituted a protected activity, she has failed to allege "a causal link between the protected activity and the employment action." Plaintiff alleges that, in January 2018, Jay said he would "fight for her" to have a romantic relationship with him. (Compl. ¶ 14); she was fired approximately eight months later (id. ¶ 18). "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, as was the case here, negates any inference that a causal connection exists between the two." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998).

Plaintiff also alleges that Jay retaliated against her by "excluding her from meetings that were necessary to do her job," but she fails to allege when such exclusion occurred. Absent an allegation as to when such action occurred, I am left to guess whether it is causally linked to her alleged protected activity. Plaintiff is obliged to state her claim in her pleadings, if she has one. The court does not fill in the holes with assumptions and suppositions. Plaintiff will be permitted to replead this claim.

## IV.   CONCLUSION

Plaintiff's complaint contains the barest factual allegations possible and, accordingly, falls short of alleging "severe or pervasive" harassment in her workplace. Likewise, her retaliation claim contains no factual allegations that would establish a causal link between any protected activity and her termination. She will be granted fourteen (14) days to file an amended complaint, if she so chooses.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 8th day of July, 2020.

SENIOR UNITED STATES DISTRICT JUDGE